May it please the Court. My name is Rachel Steinholt, and I represent Mr. Totaro. We are asking this Court to vacate the order denying Mr. Totaro's motion to reconsider the restitution payment schedule, and then to remand for reinstatement of the $200-per-month restitution payment schedule set out in the Second Amended Judgment. I am here to discuss three errors the District Court made when it increased Mr. Totaro's restitution payment schedule from monthly payments of $200 to $1,000. The first error I'll discuss is the District Court erred in finding that there was — I have two background questions. Sure. One that I couldn't figure out from the briefs. When did Mr. Totaro begin receiving Social Security benefits? That's — it's my understanding that it would have been once he was released to home — But when? I mean, is this fact — I mean, this is a fairly important fact. It is. Where is it? Well, I will say that the — If it's not in the record, that's the answer. It's not in the record. All right. Then did he notify the court when he began receiving benefits of this substantial new source under 3664N as construed in evidence? To my — that's not in the record either, whether he did or did not. Well, if he didn't, shouldn't he be ordered to pay a catch-up? That would be for the District Court to decide based off of his financial circumstances. I think that gets to the material change question, is whether or not the Social Security payments amount to — It is. It is what? It is a material change. We disagree with that. Then you want us to overrule it? No. Here's what makes this distinguishable. So — Well, now I've got another question. Okay. Because this record is — I found it very inadequate. Does the appeal include the July 25th amended judgment or just the November 22 order denying the motions? From a jurisdiction — like, from a jurisdictional question, are you asking if it's a timely — Is the earlier order under review? Yes. How do you — where do you — what authority do you have for your notice of appeal encompassing both? I don't have direct authority on that. And I do want to point out that Mr. Tutero handled this pro se below. He was not represented by counsel on this issue. Our office was appointed at the appellate level. But I do want to revisit that material change question. The statute doesn't authorize a new sentencing judge to do a redo. There has to be a material change in order for the court to revisit that payment schedule. Mr. Tutero was originally sentenced over 20 years ago. And at that time, the district court acknowledged that 30 years was potentially a life sentence. But in the event that it wasn't, then the judge felt that a $200 restitution payment was appropriate. And so Mr. Tutero is basically in the same position that the court would have anticipated him to be when he was originally sentenced and the judgment originally ordered $200. Well, that's a question for the 3664 judge to determine. Correct. And we believe that they erred. Whichever government's proceeding under. Yes. So we believe that that was an error, that the district court found there was a material change and there wasn't. And that's because Mr. Tutero was, even though he was released early, which is what the district court found, that it was basically. So is that a, what's the standard review on this? This would be, I believe it's an abuse of discretion, that he found a material change. And we disagree with that finding. So, again, Mr. Tutero, even though he was released early, he was still released when he was in his 80s. He was released to the same wife. Aren't we reviewing the main question in this case for plain error? The procedural question, yes, is for plain error. There's also, we think that even if the court were to find that there was a material change and even if the court were to find that there was not a procedural error when it came to the notification, that the amount of $1,000, which is 88% of his monthly income, is an abuse of discretion. So, which I will turn to that issue. The amended restitution payment schedule leaves Mr. Tutero with just $132 per month to cover any and all of his expenses. Well, that's your reading of the financial evidence. Correct, which isn't disputed. What about hundreds of thousands of assets in his wife's name? His wife's name. I think that's the key part here, is that his wife's name. Well, what authority that that can't be considered? I could not find authority. I don't think you, I didn't think you could. Yeah, there's not clear authority on whether a party who, she was not a party to the underlying criminal offense. That's not in dispute. It doesn't matter, necessarily. I mean, it may matter, but there isn't 3664 law to support your categorical assertions of what was wrong here. Including the wife's assets, including the money that he's paying. I mean, the little bit of left is after he pays $1,000 to his wife every month, right? Correct. Yeah, I mean, the 88% includes money he's paying to his wife to help with her medical expenses, which is understandable. But while they sit on very substantial, tangible assets. So, even if the court were to find that it is appropriate for the spouse to cover their spouse's criminal restitution payment, here the amount is just too much. Because what it does is it makes Mr. Totaro, in essence, a financial dependent on his wife. So what? So, it's an abuse of discretion to do so. Yeah, but you don't have any authority for that. You're saying that the wife prevails over the restitution victims. Not necessarily. I'm disputing that the district court found that his wife was in a financial position, in a secure financial position, in order to, in essence, take Mr. Totaro on as a financial dependent. So, even if we set aside her chemotherapy treatments, her current monthly expenses did exceed her income. And then, on top of that, you add the $3,000 monthly. I've done an awful lot of 3664 research in the last two years. And to my knowledge, there is no case supporting your approach to this. They are live issues, for sure. But this notion that the wife has to be excluded and social security benefits should be excluded and so forth, there's no support for that in the federal appellate decisions. We are venturing into new territory with this. That's all right, but why should we do that? Why does your client and his wife deserve the kind of priority over restitution victims that Congress seems to have said over and over again is inappropriate? What I think is important here is that we're supposed to look at what the original sentencing judge determined that was fair. No. That's not what 3664 supplemental proceedings say. You look for change of conditions, and you look for new sources of revenue, you look for change in financial circumstances, and anything else in the totality that might be relevant today that wasn't there yesterday. And our position is that the district court would have foreseen Mr. Tartaroby in exactly, almost exactly the same position that they find him today. When? Well, so what? So then there's no material change. But there's obviously a material change. First of all, there's the benefits. Right, but we don't believe that. I fault the government for not seeking more. Well, we disagree that there's a per se rule that... No, there's no per se rule. Okay. But the 3664 mandates the inquiry with the restitution victims' interests firmly in mind over whether it's a material change. Correct. Of course, we've rejected the government's notion that any new resource is automatically in there, but that was a very special case. That was an inmate account. Sure. This is not Social Security benefits. They're almost universal if a person serves a long enough sentence. Okay. And the authority says they're a material change. Well, I disagree with that. There should have been a notice, and that means there should have been some increased payments the first month those benefits came in. We disagree that those benefits, the payment of them, equals a material change. But I do want to... But without authority. Right. We do distinguish in our briefing cases where courts have looked at Social Security payments. Even though an incarcerated person does not have the new expenses of retirement that everybody else incurs and that are the basic underlying purpose of Social Security benefits. But nonetheless, the incarcerated person gets to keep having free housing and meals and the benefits. So I think you hit on a key distinguishing... From the limited cases that kind of have looked at this scenario, I think you're hitting on a key part, which is in Dye, which Dye relies on grant, which is a Second Circuit case, that the individuals did get more money, but they were inmates at the time. Here, Mr. Totaro was released, and he needed those Social Security payments to be able to subsist, which is different from the inmates in Dye. Was he at home detention? He was, and then he was released ultimately on compassionate release. Say, I had a quick question. Yes. Going back to that earlier discussion about which order is on appeal. Yeah. Now, do you think we are reviewing both orders, just the order denying the motion to reconsider and the original order, or just the former, just the motion to reconsider? Well, there's a lot of overlap between the two, but I guess our position would be that the order we appealed, or Mr. Totaro appealed from, was that order to reconsider. Order denying the motion to reconsider. Correct. I understand the overlap, but there may be a difference, say, in the standard of review. A motion to reconsider is not always the same as the underlying issue. Sure. Well, and to that point, you know, nothing was raised in the government's brief on timeliness. That wasn't dispute or any sort of standard reviews. I know it wasn't raised, but it still could be. I don't know if it's jurisdictional or not in a criminal case. Maybe they've waived any, you know. I would like to reserve the remainder of my time for rebuttal. Thank you, Ms. Steenhold. Mr. Kelderman. Good morning, Your Honors. May it please the Court and counsel, I'm Eric Kelderman, Assistant United States Attorney representing the government in this appeal. The standard of review here, at least as to this procedural issue, is it's one of those rare cases where there actually was an error. The United States is a — Well, that wasn't argued this morning. Why don't you just rest on your brief? Thank you, Your Honor. The — So you're acknowledging that we're reviewing the July order. It sounds like the government didn't argue at all that the notice was untimely as to that. So you've forfeited any claim of untimeliness? We did, Your Honor. I thought about it at the time when I was drafting the initial brief. I don't need your whole thought process. I just wanted to know the bottom line. You're not — the government is agreeing that we can review the July order? Correct, Your Honor. I see. Yes. There was a material change in circumstances. Totaro got out on his home confinement. So he got out of actual physical custody in a prison, and this was a BOP decision, uncompassionate release. He went home, and he was on home confinement at that time. I don't believe that the Social Security benefits started at that time. My memory is that they started later on when he received compassionate release, and the district court reduced his sentence to a sentence of time served as of, I believe it was March of 2022. That's when the Social Security benefits would have started, from my memory. He began paying, at that time, $25 a month. And he paid $25 a month on seven different months for a total of $175. Was he paying until March 2022? I don't — no. I don't believe that he made any payments before 2022. He never notified the court. When should he have started making payments? Well, the United States would say that he should have started when he was on home confinement because he was out of custody. He could have done any number of things. He needed court permission or U.S. probation permission to do a number of different things. He claims that he had to do it. Did you seek that catch-up? We did not at that time, Your Honor. This — I'm not sure that the United States was even aware that he was on home confinement. I didn't ask our financial litigation unit if they were notified when he went to home confinement. Did the district court's increase from 200 up to 1,000 have anything to do with catching up? Or was it based on the finances at the time? I believe both. Judge Lange wrote in his order that the $200-per-month payment was barely going to put a dent in the restitution that he owed and that he had income coming in, that he had his Social Security benefits that were going to start coming in. And the whole point of his order, of the district court order, was to at least accelerate the rate of payment on almost $2 million in restitution that Totaro still owed. The material change, the Second Circuit authority that's cited in the brief shows that that Social Security payment was a material change. It was something that is specifically allowed or permitted for the district court to consider. The district court also noted in its order that there was no reason, because at the same time, when the judge — when Judge Lange issued the order to show cause why the restitution shouldn't be increased, Totaro himself moved for — to have his restitution amount waived or to stop restitution, saying that he didn't have the money, that he had to give it to his wife. Well, he walked out of prison or walked out of home confinement to a home where his wife already had — When was that motion decided? In the order? Yes. The July order. The order on the motion — I'm sorry, the order modifying the restitution, the original one. And then there was a motion for reconsideration. I believe Judge Lange reiterated some of the points in that one. But he walked out, and his wife already had all of these expenses that are listed. She had house payments. She owned a car. She had, I believe, it was nearly $80,000 in different bank accounts. In other words, he walked out, and he even admitted in his briefing at one point that he was providing his wife with $1,000 a month. And that was how he was claiming that he didn't have the money to do anything. Well, the Court found that he had $1,000 a month, but these expenses existed before. His wife's financial situation was not in jeopardy, and he made all of these findings. And these are things that Totaro himself had put into the record, his admission about the $1,132 a month, and that he was providing that money to her. And so the Court said these expenses were already taken care of, and so now that $1,000 a month, that $1,132, you're going to pay $1,000 of it toward the restitution that these people had been waiting for over 20 years to receive. As to the material change, it doesn't have to be necessarily a windfall of money or anything like that before the Court can call it a material change. Judge Lange, the district court here, appropriately looked at that amount and said, this payment is coming in, and it's a regular payment. It's something that you're going to continue to get. The rest of your expenses are taken care of, and it was perfectly appropriate for the Court to look at that. Your Honors, the United States submits that all of these things were appropriate for the Court to consider, the financial circumstances, the change that he had, and then what he walked out of prison, both literally when he got home confinement and also figuratively when he went from home confinement to just being on supervision. All of those things constituted a material change, and the United States requests that the Court affirm the district court order, I guess, on reconsideration, denying reconsideration of the restitution amount that it had set in its original order, increasing the amount. I had anticipated that I would be talking more about the first issue, but at this point, the United States has nothing further to present, and we ask that the Court affirm the order. Thank you, Mr. Kelderman. Thank you. I want to hit on my opposing counsel's points that he highlighted in Judge Lang's orders, which was $200 was barely going to put a dent in restitution, and so the goal was to accelerate the payment. I think that highlights that the judge's intent was to do a redo of the original sentencing hearing. The original sentencing judge knew that it was very possible that these victims would never receive this total restitution amount. I find it interesting that the Court said at this age, at your age, this may indeed, as your counsel has indicated, be a life sentence, and if it is, there's probably no life sentence that is more just. Correct. Showing great sympathy for Mr. Totaro. Right. But I think that also highlights. So you think if that judge had ruled on this order, it would have gone back to those prior, I don't know if leniency is the right word. I don't know what 50% of Mr. Totaro's income while incarcerated was, how $200 change relates to that. So we know what the. Do you know? I'm not sure I understand the question. How much got paid back while he was incarcerated? He states $7,200, and that's in the record in his briefing. How many years? Over 20 years, and he paid about $30 a month is what he stated. But to your point about what the judge said at sentencing, yeah, when it comes to restitution, it reflects that he understood that it was a likelihood that these victims would never receive all their money. And he said that if he were to get released, which was possible that he would not be released, then he found that $200 was appropriate. And it's not for this judge to do a redo of what the original judge found. I think that you're wrong as a matter of statutory interpretation. You're just dead wrong. I mean, 3664 contemplates these kinds of inquiries. And if it's a different judge, it's a different judge. I see that my time is up unless the court has any other. I don't see any. Okay. Thank you, Ms. Steenhofer.